UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
ALYSON DE LORENZO

                           Plaintiff,                            **REPORT AND**
                                                        **RECOMMENDATION**

                -against-                                  CV 19-3460 (JMA)(AYS)

KING KULLEN GROCERY CO., INC., and
WILD BY NATURE,

                            Defendants.
------------------------------------------------------------------X
**ANNE Y. SHIELDS, United States Magistrate Judge:**

        This is an action commenced by Plaintiff, Alyson De Lorenzo ("Plaintiff" or "De

Lorenzo"), alleging gender discrimination and retaliation in violation of Title VII of the Civil

Rights Act of 1964, 42 U.S.C. 2000e ("Title VII"), disability discrimination in the form of failure

to accommodate and retaliation in violation of the Americans with Disabilities Act, 42 U.S.C.

12101 (the "ADA"), as well as certain parallel New York State causes of action alleged pursuant

to the New York State Human Rights Law, N.Y. Exec. Law § 290 (the "NYSHRL"). (See

generally Plaintiff's Complaint herein filed on June 11, 2019 (hereinafter the "Complaint")

appearing as Docket Entry ("DE") [1].)[1]

        Named as Defendants are King Kullen Grocery Co., Inc ("King Kullen") and Wild by

Nature, Inc. ("WBN") (collectively "Defendants"). Plaintiff is a former employee of Defendants

who worked at a retail location of WBN located in Huntington, New York (the "Huntington

Store").

---

[1]      The Complaint also alleges a New York State law cause of action in negligent retention
and supervision (Count 8 of the Complaint). In response to the present motion, Plaintiff has
abandoned this claim and it is therefore not discussed herein.

Presently before the Court, on referral from the Honorable Joan M. Azrack for Report and Recommendation, is Defendants' motion to dismiss the Complaint, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  For the reasons set forth below, this Court respectfully recommends that Defendants' motion be granted with respect to Plaintiff's ADA claims for failure to exhaust administrative remedies, and otherwise denied.

BACKGROUND

The facts set forth below include those set forth in the Complaint.  They are accepted as true for the purposes of this motion.  Also included in the description below are facts drawn from two documents referenced and relied upon in the Complaint.  The first such document is Plaintiff's administrative charge of discrimination made to the Equal Employment Opportunity Commission (the "EEOC Complaint").  (DE [21] at 7-15).  The propriety of considering the EEOC Complaint (and accepting Plaintiff's statements therein as true) in the context of the present motion is beyond question.  See De Figueroa v. City of New York, 403 F. Supp. 3d 133, 149 (E.D.N.Y. 2019).  The Court has also considered, and makes reference to, a letter dated November 15, 2018 from Defendants' outside counsel to Plaintiff's counsel (the "November 15 Letter").  (DE [21] at 3-5).  That letter describes the results of Defendants' investigation into Plaintiff's charge of harassment.  While Plaintiff disagrees with the findings set forth in the November 15 Letter (and the Court cannot now accept those findings as true), Plaintiff does not object to the consideration of the November 15 Letter by the Court here.  Nor can she, since that letter is repeatedly referred to, extensively quoted from, and forms the basis of many allegations appearing in the Complaint.  In particular, Plaintiff argues that the conclusions Defendants set forth in the November 15 Letter are evidence of their improper handling of her complaint.

2

With these documents properly in mind, the Court turns to discuss the facts considered in the context of Defendants' motion.

I.      The Parties

Plaintiff is an individual who resides in this district.  (DE [1] ¶ 26.)  Prior to November 14, 2018, she was employed as a manager at the Huntington Store.  (DE [1] ¶ 58-59 (describing Plaintiff as a "manager" in the complaint); see also DE [21] at 10 (EEOC Complaint in which Plaintiff describes herself as a "Co Asst Manager").)  Defendant King Kullen is a supermarket chain that operates stores at several locations and maintains its principal place of business within this district.  (DE [1] ¶ 23.)  WBN is a subsidiary of King Kullen, operating at five locations in New York.  One of those locations is the Huntington Store.  (Id. ¶ 24.)

II.     Plaintiff's Employment at WBN and the Allegations of Discrimination

        A.      Plaintiff's Hiring and the Description of Her Harasser

Plaintiff was hired by Defendants on April 9, 2018.  The acts of discrimination forming the basis of the Complaint arise from the conduct of Plaintiff's co-worker, Mike Burns ("Burns"). While Plaintiff clearly describes herself as a manager at the store, it is unclear whether Burns reported to her.  Based upon Plaintiff's pleading, the Court can assume only that Burns was not a manager, and that he and Plaintiff were co-workers.  The parties do not argue otherwise.

Burns is described as a union butcher who worked at the Huntington Store.  (DE [1] ¶ 1.) Plaintiff attaches importance to Burns' status within a union, identified in the November 15 Letter as UFCW Local 342 (hereinafter the "Union").  Specifically, Plaintiff states that she was told to "tread lightly" with respect to any allegations against Burns to avoid threatening Defendants' relationship with the Union.  (Id. ¶¶ 4, 39.)  Burns' position with the Union is

alleged to have placed Plaintiff in fear of retaliation by Defendants and/or the Union if she complained about Burns' conduct.  (Id. ¶ 40.)  For this reason, Plaintiff states that she "stayed quiet and attempted to work with Burns despite his ongoing harassment of her."  (Id.)

      B.     The Alleged Acts of Harassment

The allegations of discriminatory conduct set forth in the Complaint are discussed below. As noted above, and as required at this phase of the litigation, the Court accepts Plaintiff's version of all facts as true.  Construed broadly, the Complaint first alludes to inappropriate sexually suggestive verbal conduct by Burns.  (Id. ¶ 34.)  Burns' conduct is alleged to have escalated to acts of physical harassment that took place on October 16, 2018.

      1.     Acts Preceding October 16, 2018

Prior to October 16, 2018, Burns is alleged to have commented on the appearance of Plaintiff's hair, telling her "you know I love when you wear it down and curly."  (Id. ¶ 35.) Burns is also stated to have made frequent attempts to converse with De Lorenzo, at times getting close enough to allow Plaintiff to note the smell of alcohol on his breath.  (Id. ¶ 36.) Burns is further alleged to have followed Plaintiff around the Huntington Store, leering at her and commenting that she was able to hold a box against a freezer door because of her "good child-bearing hips," a remark Plaintiff states that she reported to at least three co-workers.  (Id. ¶ 38.)  On the same day when Burns made this remark, Burns is alleged to have made "multiple comments of a sexual nature" and to have "stalked De Lorenzo around the store. . . ."  (Id. ¶ 5.)

      2.     Acts Alleged to Have Occurred on October 16, 2018

Burns is stated to have physically and sexually assaulted Plaintiff on October 16, 2018. On that day, Burns approached De Lorenzo near a walk-in freezer "suddenly and without warning."  (Id. ¶ 42.)  He then physically assaulted Plaintiff by "grabbing her and holding her

tightly in an unwanted manner." (Id.)  Plaintiff describes the incident by stating that Burns tightened his grip on Plaintiff, put his face next to her ear, and spoke about a co-worker in a disparaging and vulgar way.  During this encounter, Plaintiff again smelled alcohol on Burns' breath.  (Id. ¶ 43.)  Following the incident of October 16, 2018 (hereinafter the "October 16 Incident"), Burns is alleged to have confessed to assaulting another female employee at the Huntington Store, saying "I just came from the kitchen where I gave the girl in there a nice tight hug." (Id. ¶ 45.)  Burns further stated that he broke two of her ribs, it must be his "lucky day," and that maybe he would "get a kiss." (Id.)

Later the same day, Burns approached De Lorenzo, asked how long she had been wearing glasses and said, "Did I ever tell you how fuckin' sexy I find it when women wear glasses?"  He then said "oh boy" "in a manner intended to communicate that he was sexually aroused by De Lorenzo's appearance." (Id. ¶ 46.)  When Plaintiff walked away from him, Burns is alleged to have followed her, telling her that she "must be Irish with that red flowing hair." (Id. ¶ 47.) Plaintiff again attempted to ignore Burns, who continued to approach her saying, "I don't believe in sexual harassment," and "I'm a very sexual person and I think that if a woman is wearing her pants fitted up to her bottom or a fitted top and I look I should be able to say you look good today without getting in trouble." (Id. ¶ 48.)  While saying this Burns "gestured in the shape of a female body with his hands." (Id.)  When De Lorenzo attempted to explain the offensive nature of his conduct and comments, Burns responded by saying, "people are too sensitive; all that corporate stuff is bullshit." (Id. ¶ 49.)  He then proceeded to pat Plaintiff on the backside and said, "I don't know, I've been married thirty years. If I was to get a kiss, I'd take it happily." Burns then puckered his lips as if to invite a kiss.  (Id. ¶ 50.)

De Lorenzo states that much of Burns' conduct was witnessed by several co-workers and captured on store video surveillance. (Id. ¶¶ 42, 51.) Video footage of Burns' conduct exists, and it appears that it has been reviewed by Defendants. Indeed, in the November 15 Letter, Defendants confirmed the veracity of Plaintiff's complaint of unwanted hugging and the making of inappropriate suggestive comments by Burns. (DE [21] at 2.)

III.   Events Following the Acts of Harassment and Plaintiff's Report to Defendants

Plaintiff states that she was so shocked by Burns' behavior during the October 16 Incident that she immediately took a break, exited the Huntington Store and went to her car. There, she suffered a panic attack, and experienced extreme anxiety and discomfort at the thought of re-entering the store if Burns was also there. (DE [1] ¶ 52.) She was, however, eventually able to go back inside the store and attempted to continue her work day. (Id. ¶ 53.) That afternoon, De Lorenzo reported Burns' behavior to Rob Kearny ("Kearny"), her manager at the Huntington Store. Kearny contacted Defendants' Human Resources department.

The next day, Plaintiff followed up with a written complaint. (Id. ¶ 54.) Kearny forwarded Plaintiff's complaint to Kelli Celli ("Celli"), King Kullen's Director of Human Resources. (Id. ¶ 9.) Upon receiving the complaint, Celli contacted Plaintiff by telephone and told her that Defendants would not physically enter the Huntington Store to investigate Plaintiff's complaint "for several days because they did not have the time to do so." (Id. ¶ 55.) However, at the same time, De Lorenzo and Kearny reviewed video footage of the October 16 Incident, which confirmed Plaintiff's claims of what occurred. (Id. ¶ 56.)

Defendants engaged counsel, Megan Gillen, Esq., of the law firm of Bond, Schoeneck & King (Defendants' outside counsel) to conduct an investigation of Plaintiff's claims. (Id. ¶ 7.) Defendants did not suspend Burns pending the outcome of their investigation. (Id. ¶ 57.)

Additionally, Plaintiff was scheduled to return to work at the Huntington Store on a date when Burns would be there, and Kearny would not.  This would result in De Lorenzo being the only manager in the building.  (Id. ¶ 58.)

Plaintiff alleges that Defendants' initial response to Plaintiff's complaint of harassment was to suggest that De Lorenzo and Burns be separated within the store.  Plaintiff characterizes this suggestion as "nonsensically inadequate" because Burns was known to have a penchant for invading Plaintiff's space and ignored her attempts to separate herself from him.  Moreover, since Plaintiff was the only manager in the Huntington Store, she might need to interact with Burns in order to carry out her job responsibilities.  (Id. ¶ 59.)

Plaintiff states that she experienced severe anxiety at the notion of working at the Huntington Store on a day when Burns was scheduled to work there, only one day after the October 16 Incident.  In fact, she was so anxious that she asked her husband to take days off from work to drive her to work.  (Id. ¶ 60.)  De Lorenzo states that she experienced such severe anxiety that she realized that she could not return to work without medical treatment.  (Id. ¶ 61.) By the next day (October 18, 2018), Plaintiff states that she was suffering from such unbearable panic attacks that Defendants took her "off schedule" until the investigation could be concluded. Although Plaintiff was therefore not required to come to work, she continued to be paid during the period that the investigation was continuing.  (Id. ¶ 62.)

Plaintiff complains that Defendants failed to keep her apprised of the status of the investigation or her job status.  (Id. ¶ 63.)  She states that on the morning of October 18, 2018 (one and one half days after the reporting of the October 16 Incident), she texted Kearny telling him that she had reached out to Celli, but had heard nothing back, and that she "would like to be

updated" on her reported incident as soon as Celli had any information.  (<u>Id.</u> ¶ 64.)  De Lorenzo states that she never received a response from Kearny.  (<u>Id.</u>)

However, On October 18, 2018, the same day that Plaintiff alleges to have texted Kearny, Celli informed Plaintiff that Burns had been transferred to a different store.  (<u>Id.</u> ¶ 65.)  Despite this transfer, Celli is alleged to have acted in an "accusatory manner and gave De Lorenzo the impression that Defendants were excusing Burns' behavior and generally sided with him."  (<u>Id.</u> ¶ 65.)  Defendants thereafter put De Lorenzo back on schedule to work at the Huntington Store, six days after the October 16 Incident, on October 22, 2018.  (<u>Id.</u> ¶ 66.)  Plaintiff states that this scheduling took place without Defendants first confirming that her anxiety had subsided to the extent that she was ready to return to work.  (<u>Id.</u>)  De Lorenzo states that because she continued to experience severe anxiety, she was unable to return to the Huntington Store.  Offering to provide medical documentation, Plaintiff asked Defendants to extend her paid leave of absence.  Defendants are alleged not to have responded to this request.  (<u>Id.</u> ¶ 67.)

Plaintiff states that her fear of retaliation, coupled with her dread of returning to work at the same store where she was harassed, caused her to suffer severe anxiety and panic attacks and "made it impossible" to return to work at <u>any</u> WBN store location.  (<u>Id.</u> ¶ 69 (emphasis added).)  Therefore, on October 26, 2018, Plaintiff requested reassignment to work at the Bethpage corporate headquarters of King Kullen, "to a comparable position in salary and stature."  (<u>Id.</u> ¶ 70.)  Defendants refused this request, which Plaintiff refers to in her pleading as an "accommodation."  (<u>Id.</u> ¶ 71.)

The Complaint refers to the anxiety and panic attacks suffered by Plaintiff as a disability for which she sought treatment.  Her physician is stated to have diagnosed her with depression and an anxiety disorder, and to have indicated that she would be unable to work at any WBN

retail store location for many months.  (Id. ¶ 72.)  De Lorenzo states that she reasonably feared

that other employees with whom Burns was friendly – and who were members of the Union –

would retaliate against her for reporting Burns' behavior.  (Id. ¶ 73.)

On November 14, 2018, approximately one month after leaving her position at the

Huntington Store (and without prior notice to Plaintiff), Defendants stopped paying Plaintiff's

salary.  (Id. ¶ 74.)  Prior to this date, Defendants did not update her about the status of their

investigation regarding the October 16 Incident, and, according to Plaintiff, failed to contact her

about returning to work.  (Id. ¶¶ 75-76.)  Plaintiff alleges that her November 2018 "suspension

without pay" was in retaliation for her verbal and written complaints of harassment and request

for a disability accommodation.  (Id. ¶ 77.)

IV.    The Outcome of the Investigation: The November 15 Letter

On November 15, 2018, within one month of Plaintiff's complaint about the October 16,

Incident, and the day following Defendants' decision to stop paying Plaintiff's salary,

Defendants communicated the outcome of their investigation to Plaintiff.  That communication

came by way of the November 15 Letter which is, as referred to above, referred to in the

Complaint.  That letter was sent by Defendants' outside counsel to Plaintiff's lawyer, who had

apparently been in communication with Defendants on behalf of Plaintiff.  The November 15

Letter states, and the Complaint quotes, that Plaintiff's "allegations of unwanted hugging and

inappropriate suggestive comments were true."  (Id. ¶ 78.)  Plaintiff characterizes the November

15 Letter as making excuses for Burns' behavior, "referring to it as 'chauvinistic,' but allowing

that he 'was just joking around, he thought he was complimenting her,' and 'it was never his

intention' to make her uncomfortable."  (Id. ¶ 79.)  These statements, which Defendants would

likely argue are taken out of context, are indeed contained within the November 15 Letter.

In the Complaint, Plaintiff states that she was shocked to learn that Defendants did not terminate, suspend, or even demote Burns.  (Id. ¶ 80.)  Instead, Defendants are alleged to have become Burns' advocate by transferring him to a different store in the same area and notifying the Union that De Lorenzo had made a complaint against Burns.  (Id.)

As noted, the November 15 Letter sets forth Defendants' statement regarding the outcome of their investigation.  A review of the letter makes clear that Defendants take issue with the allegation that no action was immediately taken with respect to Plaintiff's complaint to Kearny on October 16, 2018.  Thus, the November 15 Letter states that Kearny immediately began the investigation, and informed Burns that his conduct was "completely unacceptable." (DE [21] at 3.)  Defendants take issue with Plaintiff's statement that she was required to immediately return to work alongside her harasser.  According to Defendants, De Lorenzo was asked if she would feel comfortable coming in to work the day after the October 16 Incident (after Burns' shift) and that Plaintiff allegedly said that she would do so.  Defendants also state that Burns was "immediately" transferred to a WBN store twenty-five miles away from the Huntington Store.

Plaintiff's Complaint acknowledges that Burns was transferred.  However, she takes issue with Defendants' position that the transfer was immediate, and the Complaint does not comment as to the distance between the Huntington Store and the location where Burns was directed to report.  Defendants also state that Burns was banned from ever entering the Huntington Store – a fact not contained in the Complaint.  Defendants further state that Burns was reeducated regarding the WBN sexual harassment policy and advised that if he were to engage in any inappropriate touching or conversation, at any time in the future, he would be immediately suspended pending termination.  (DE [21] at 4.)

Defendants agree with Plaintiff's statement that the Union was advised of her complaint. While Plaintiff refers to Union notification as evidence of harassment, Defendants obviously view this fact otherwise, i.e., as evidence of misconduct to be placed in Burns' employment file, a matter that his union was likely to have been entitled to know.

As to punishment for Burns' confirmed conduct, the November 15 Letter states that he was denied a promotion opportunity which would have come with an increase in pay. Defendants explain that its measures, which were short of outright termination, were sufficient to address Plaintiff's complaint because over the course of Burns' twenty-five-year tenure with the company, Plaintiff's complaint was the first they received regarding any inappropriate conduct. Additionally, according to Defendants, Burns showed remorse, was receptive to reeducation, and it was felt that he was entitled to a second chance. Defendants characterize their response to Plaintiff's complaint (which included assigning Burns to a different location and disciplinary action) as an appropriate corrective response under the circumstances.

As noted, Plaintiff states that she was not required to return to work and was paid from the date of the October 16 Incident until November 14, 2018. Defendants agree that Plaintiff was paid through November 14, 2018. Plaintiff characterizes Defendants' decision to stop paying her salary as a "suspension without pay in retaliation for her verbal and written complaints of harassment and request for a disability accommodation." (DE [1] ¶ 77.) Defendants characterize this scenario differently. Specifically, with respect to Plaintiff's future employment, the November 15 Letter states that Plaintiff failed to contact Celli to obtain a work schedule or submit medical documentation. (DE [21] at 4.) The letter states that instead of contacting Defendants, they received only a letter from her lawyer threatening legal action. Further, Defendants state that Plaintiff's lawyer (to whom the November 15 Letter was

addressed) failed to respond to a November 7, 2017 email seeking information.  (Id.)  The November 15 Letter concludes by stating Defendants' position that Plaintiff was free to return to work and asks that she contact Celli.  (Id.)  It is undisputed that Plaintiff has not returned to work.

V.      The EEOC Complaint

On or about October 23, 2018, Plaintiff filed the EEOC Complaint.  (DE [1] ¶ 32.) Therefore, Plaintiff charged Defendants with unlawful discrimination because of sex in violation of Title VII and New York State law.  As here, Plaintiff alleges that the last act of discrimination took place on October 16, 2018.  (DE [21] at 8.)

The EEOC Complaint contains a "check-off" box for complainants to specify the type of discrimination being charged.  There are boxes for, inter alia, discrimination based upon age, race, religion, disability and sex.  The check-off box for cases alleging sex discrimination contains sub-boxes that allow the complainant to indicate their gender, and whether the discrimination charged is based upon pregnancy or harassment.  Plaintiff checked off the box for sex discrimination, specified that she was female, and also checked the box for sexual harassment.  (DE [21] at 9.)  She did not check the box for discrimination based upon a disability.  (Id.)  The EEOC Complaint form contains a second check-off series of boxes allowing complainants to indicate "acts of discrimination" alleged.  In this part of the form, Plaintiff checked two boxes.  The first, indicating that she was sexually harassed, and the second box, stating that she was "harassed or intimidated" in ways "(other than sexual harassment)." (DE [21] at 10.)  Although a check-off box was available to indicate that Plaintiff claimed denial of an accommodation for a disability, that box was not checked.  (Id.)

The factual description set forth by Plaintiff in the EEOC Complaint appears as an attachment to the form.  The statement attached by Plaintiff is entitled "Statement against Mike Burns for Sexual Harassment."  (DE [21] at 13.)  It sets forth the same facts recited above that appear in the Complaint.  The only mention of stress, anxiety and a panic attack are in the description of how Plaintiff felt on the day of the October 16 Incident.  There is no mention of any request for a disability accommodation.  (Id. at 14.)  The EEOC Complaint was forwarded to Defendants. The cover notice to that charge checks the box indicating that Defendants were being charged with Title VII discrimination.  It does not check the box for a claim of disability discrimination.  (DE [21] at 15.)

On or about May 30, 2019, the EEOC issued Plaintiff a Notice of Right to Sue (the "Right to Sue Letter").  Plaintiff states that she received the Right to Sue Letter on or about June 3, 2019.  (DE [1] ¶ 33.)  Plaintiff filed a written complaint of discrimination with the New York State Division of Human Rights, which was withdrawn on or about May 8, 2019.  (DE [1] ¶ 22.)

VI.    Causes of Action

Based upon the facts recited above, the Complaint alleges eight causes of action.  As noted above, Plaintiff has withdrawn one of those claims – her claim for negligent retention and supervision.  The remaining claims are:

- Count 1: Sexual harassment and gender discrimination in violation of Title VII;

- Count 2: Sexual harassment and gender discrimination in violation of the NYSHRL;

- Count 3: Retaliation for making complaints of harassment in violation of Title VII;

- Count 4: Retaliation for making complaints of harassment in violation of the NYSHRL;

- Count 5: Violation of duty of reasonable accommodation in violation of the ADA;

- Count 6: Retaliation for requesting an accommodation in violation of the ADA;

- Count 7: Violation of duty of reasonable accommodation in violation of the NYSHRL.

(See generally DE [1].)

VII.    Defendants' Motion

Defendants seek dismissal of the Complaint for failure to state a claim.  First, Defendants argue that the conduct alleged, even when accepted as true, does not rise to the level required by law to state a claim of a hostile environment based upon sex.  Defendants next argue that even assuming the pleading of plausible facts necessary to state such a claim, Burns' conduct cannot be properly imputed to Defendants.  For these reasons, Defendants seek dismissal of Plaintiff's Title VII and NYSHRL claims of harassment based upon sex for failure to state a claim.

Next, Defendants seek dismissal of all federal claims of retaliation (whether based upon Plaintiff's complaints of sex or disability discrimination) for failure to exhaust administrative remedies.  Thus, Defendants argue that Plaintiff failed to present any claim of retaliation, whether based upon Title VII or the ADA, for administrative review and therefore such claims must be dismissed.  Even if deemed exhausted, Defendants seek dismissal of any claim of retaliation because Plaintiff chose to stay out of work, even though her job remained available.  It is argued that she therefore cannot have suffered a retaliatory discharge in violation of any law.

Finally, dismissal of any ADA claim and any failure to accommodate claim, whether based on the ADA or the NYSHRL (which does not require exhaustion of remedies) is argued to be required on the grounds that: (1) Plaintiff is not disabled; (2) even if she is disabled, she made no request for accommodation and, (3) the accommodation described in the Complaint, i.e., reassignment to some unspecified job at Defendants' corporate headquarters, in a completely new and different capacity from Plaintiff's retail-based job, is unreasonable as a matter of law.

In support of her claim that she has exhausted her administrative remedies, Plaintiff argues that all the claims raised herein (including those of Title VII and ADA failure to accommodate and retaliation) are reasonably related to her EEOC Complaint. Thus, she argues that all federal claims were presented for administrative review, and have therefore been exhausted.

Turning to the merits-based branches of Defendants' motion, Plaintiff argues principally that issues raised by Defendants regarding her disability, as well as the facts surrounding her alleged medical leave and separation from employment, are fact sensitive and not amenable to judgment as a matter of law at the pleadings stage.

Having set forth the relevant facts and the parties' positions, the Court turns to the merits of the motion.

DISCUSSION

I.    <u>Legal Standard</u>

"To survive a motion to dismiss pursuant to Rule 12(b)(6), a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)). "Facial plausibility" is achieved when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable of the misconduct alleged." <u>Iqbal</u>, 556 U.S. at 678 (citing <u>Twombly</u>, 550 U.S. at 556). As a general rule, the court is required to accept all of the factual allegations in the complaint as true and to draw all reasonable inferences in the plaintiff's favor. <u>See Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009); <u>Town of Babylon v. Fed. Hous. Fin. Agency</u>, 699 F.3d 221, 227 (2d Cir. 2012).

"Threadbare recitals of the elements of a cause of action, supported by mere conclusory

statements . . . are not entitled to the assumption of truth." Iqbal, 556 U.S. at 678-79 (citation omitted); see also Twombly, 555 U.S. at 555 (stating that a court is "not bound to accept as true a legal conclusion couched as a factual allegation").  "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations," which state a claim for relief.  Iqbal, 556 U.S. at 679.  A complaint that "tenders 'naked assertion[s]' devoid of 'further factual enhancement'" will not suffice.  Iqbal, 556 U.S. at 678 (quoting Twombly, 555 U.S. at 557).

II.    Federal Claims: Exhaustion of Remedies

    A.    Legal Principles

Title VII requires that an employee submit their claim to the EEOC before proceeding to an action in Federal Court.  See Fitzgerald v. Henderson, 251 F.3d 345, 358-59 (2d Cir. 2001); Woods v. Dunlop Tire Corp., 972 F.2d 36, 39 (2d Cir. 1992); Singer v. New York City Health & Hosp. Corp., No. 18-cv-6356, 2020 WL 2933670, at *7 (E.D.N.Y. June 2, 2020).  Claims brought under the ADA similarly require exhaustion of administrative remedies.  See Lester v. Mount Pleasant Cottage Sch. Union Free Sch. Dist., No. 19-CV-5247, 2020 WL 3618969, at *5 (S.D.N.Y. July 2, 2020). If a plaintiff has failed to pursue a particular claim in their administrative proceeding, the federal court lacks jurisdiction over that claim, and it must be dismissed.  See Fitzgerald, 251 F.3d at 359.

However, the court can exercise jurisdiction over claims based upon conduct that is "reasonably related" to claims actually raised in an administrative proceeding.  Singer, 2020 WL 2933670, at *8; Lester, 2020 WL 3618969, at *5. "Conduct is reasonably related to conduct in an EEOC charge (or other qualifying administrative filing) if: "[1] the claim would fall within the reasonably expected scope of an EEOC investigation of the charges of discrimination; [2] it

alleges retaliation for filing the EEOC charge; or [3] the plaintiff alleges further incidents of discrimination carried out in precisely the same manner alleged in the EEOC charge." Alfano v. Costello, 294 F.3d 365, 381 (2d Cir. 2002) (citation and internal quotation marks omitted). When determining whether a claim is so related, a court must decide "whether the complaint filed with the EEOC gave the agency adequate notice to investigate discrimination on both bases." Williams v. New York City Housing Auth., 458 F.3d 67, 69 (2d Cir. 2006). In the absence of the required relation, charges not directly raised before the administrative body are deemed unexhausted, and are therefore properly dismissed.

      B.     Disposition of Exhaustion Arguments

      Defendants argue that neither the claim of Title VII retaliation nor the claims of ADA discrimination (whether based upon retaliation or failure to accommodate) have been exhausted.

      1.     The Title VII Claim of Retaliation Has Been Exhausted

      The Court holds first that Plaintiff's claim of Title VII retaliation has been exhausted. There is no question but that Plaintiff's EEOC Complaint sets forth factual information regarding claims of sexual harassment. The claim was made on October 23, 2018. While this was before Plaintiff was put into a no-pay status, the right to sue letter was not issued until May 9, 2019, months after Plaintiff last worked at the Huntington Store. Importantly, the EEOC Complaint clearly raises Plaintiff's claim of Title VII sexual harassment and makes clear that Plaintiff complained of those acts to Defendants. Such complaints unquestionably amount to protected activity within the scope of a claim of retaliation. It is therefore reasonable to find that the agency investigation into Plaintiff's claims would also include any claim that Plaintiff suffered retaliation as a result of her complaint of discrimination. Under these circumstances, the Court holds that Plaintiff's claim of Title VII retaliation is reasonably related to her hostile

environment claim of sexual harassment and therefore recommends that Defendants' motion to dismiss the claim of Title VII retaliation for lack of exhaustion be denied. See Duplan v. City of New York, 888 F.3d 612, 624 (2d Cir. 2018) ("[R]etaliation claims arising during or after an EEOC investigation are deemed exhausted when a plaintiff seeks to join them to a timely filed lawsuit on his original, exhausted claims, because it would be burdensome and wasteful to require a plaintiff to file a new EEOC charge instead of simply permitting him to assert that related claim in ongoing proceedings to adjudicate the underlying charge.").

2.    The ADA Claims Have Not Been Exhausted

While the Court holds that the Title VII claim of retaliation has been exhausted, the Court also finds that any claims alleging ADA discrimination, whether for retaliation or failure to accommodate, have not been exhausted. First, it is clear that the EEOC Complaint fails to state, in any terms, that Plaintiff was a victim of disability discrimination. Plaintiff was given a clear opportunity, in the simplest of terms, to complain to the EEOC about such discrimination, i.e., in a "check the box" form. While Plaintiff checked the boxes for gender discrimination and harassment based upon on sex, she did not check any boxes in which she could have alleged disability discrimination or failure to accommodate a disability.

Nor did Plaintiff's detailed narrative complaint raise any issue regarding discrimination based upon disability. Indeed, the only mention of Plaintiff's health appears in her description of her reaction to the October 16 Incident. This reference to damages suffered as a result of sexual harassment does not allege disability discrimination or a failure to accommodate.

Plaintiff's complete failure to mention any disability leaves the Court with no reason to believe that when the EEOC was investigating Plaintiff's claim of sexual harassment, it would have included disability discrimination within the scope of its review. Plaintiff's claims of ADA

discrimination were not reasonably related to her EEOC Complaint.  Therefore, any ADA claim has not been exhausted and this Court recommends that the motion to dismiss all of Plaintiff's disability-based claims of discrimination arising under federal law (Counts 5 and 6 of the Complaint) be granted.

Although one is required to exhaust federal employment discrimination claims, there is no such obligation under the NYSHRL.  See Ross-Caleb v. City of Rochester, 512 F. App'x 17 (2d Cir. 2013); Singer, 2020 WL 2933670 at *10 n.7.  Accordingly, in addition to considering below whether Plaintiff's exhausted Title VII claims (alleging hostile environment and retaliation) state a claim, the Court also considers the viability of Plaintiff's state law disability-based claim of failure to accommodate.

III.    Failure to State A Claim

    A.    Title VII and NYSHRL Hostile Environment (Counts 1 and 2)

To state a claim of Title VII hostile environment based upon sex, a plaintiff must plausibly allege facts showing conduct that was "sufficiently severe or pervasive as to alter the conditions of the victim's employment and create an abusive working environment."  Alfano, 294 F.3d at 373.  New York state applies the same standard to hostile environment claims arising under the state human rights law.  See Vivenzio v. City of Syracuse, 611 F.3d 98, 106 (2d Cir. 2010); Pulizotto v. McMahon, 406 F. Supp. 3d 277, 300 (S.D.N.Y. 2019).  When determining whether the conduct alleged rises to the level of stating a claim, courts consider: "(1) the frequency of the discriminatory conduct; (2) the severity of the conduct; (3) whether the conduct was physically threatening or a mere offensive utterance; and (4) whether it unreasonably interfered with an employee's work performance."  Harris v. Forklift Sys., Inc., 510 U.S. 17, 21-22 (1993).  For conduct to be considered "pervasive" it must be "more than episodic," but must

instead be "sufficiently continuous and concerted." Littlejohn v. City of New York, 795 F.3d 297, 321 (2d Cir. 2015). Even if conduct is not plausibly alleged to have been pervasive, it may still be sufficient to state a claim where plaintiff alleges conduct that is so severe as to constitute a hostile environment. See Singer, 2020 WL 2933670, at *9.

Seeking dismissal of Plaintiff's hostile environment claim, Defendants liken Burns' behavior to that of defendants in cases dismissing (or granting summary judgment) where it was determined, as a matter of law, that the particular conduct at issue did not constitute a hostile working environment. (Defs.' Mem. of Law in Supp. of Mot. to Dismiss, (DE [19]) at 7-12 and n.3.) Some cases relied upon were decided in the motion to dismiss phase and several were decided on summary judgment. See id. A review of these cases reveals that none are binding and that each was decided on the basis of particularized facts. Upon consideration of those cases and the allegations set forth in this case, the Court holds that the Complaint plausibly alleges a claim of a sufficiently hostile environment to survive a motion to dismiss. Indeed, dismissal is especially unwarranted where, as here, Plaintiff has plausibly alleged a series of inappropriate acts that culminated in an actual incident of physical assault that was verified by Defendants to have occurred.

Turning to the issue of whether Burns' conduct may be properly imputed to Defendants, the Court notes that Defendants' Title VII hostile environment liability is, as the parties agree, subject to a negligence standard. This standard applies because Burns was Plaintiff's co-worker. Under such circumstances, an employer can be liable only if they were negligent in "controlling working conditions." Vance v. Ball State Univ., 570 U.S. 421, 424 (2013). Thus, liability may attach if the employer knew of the harassment but neglected to take appropriate remedial action. See Dabney v. Christmas Tree Shops, 958 F. Supp. 2d 439, 460 (S.D.N.Y. 2013), aff'd sub nom.

Dabney v. Bed Bath & Beyond, 588 Fed. App'x. 15 (2d Cir. 2014); Johnson v. Xerox, 838 F.

Supp. 2d 99, 105 (W.D.N.Y. 2011).  Similarly under state law, Defendants may be liable only if

they encouraged, condoned or approved of the harasser's conduct.  See Parra v. City of White

Plains, 48 F. Supp. 3d 542, 551 (S.D.N.Y. 2014); see also Setty v. Fitness, No. 17-CV-6504,

2018 WL 8415414, at * 7 (E.D.N.Y. Dec. 18, 2018); Flanagan v. GEICO Gen. Ins. Co., No. 11-

CV-2682, 2015 WL 7273210, at *5 (E.D.N.Y. Mar. 31, 2015) (finding that inaction in response

to discriminatory conduct may indicate condonation of such behavior).

Defendants' argument that they handled Plaintiff's complaint appropriately is supported

by their version of the events as set forth in the November 15 Letter.  Plaintiff, however, takes

issue with Defendants' characterization of the facts, arguing that Burns' conduct was ignored,

and that he was not appropriately disciplined.  The fact-finding required to accept Defendants'

version of the facts in order to grant the pending motion cannot be engaged in at the pleading

stage.  Because Plaintiff's pleading is sufficient to raise questions of fact as to Burns' conduct

and Defendant's reaction thereto, the motion to dismiss should be denied.

While dismissal on the pleadings is not warranted, the Court notes that Plaintiff's

allegations regarding Burns' position with the Union have not been relied upon to lend

plausibility to Plaintiff's Complaint.  No facts pleaded make any plausible connection between

Burns' conduct, his position with the Union, and harassment based upon Plaintiff's sex.

Nonetheless, for the other independent reasons set forth above, this Court recommends that

Defendants' motion to dismiss the claim of Title VII hostile environment based upon sex be

denied.

   B.    Title VII and NYSHRL Retaliation (Counts 3 and 4)

The elements of a claim of retaliation are "that (1) the plaintiff engaged in a protected

activity, (2) the employer was aware of this activity, (3) the plaintiff was subject to an adverse

employment action, and (4) a causal connection existed between the adverse action and the

protected activity." Coffey v. Cushman & Wakefield, Inc., No. 01 Civ. 9447, 2002 WL

1610913, at * 4 (S.D.N.Y. July 22, 2002); see also Muller v. Costello, 187 F.3d 298, 311 (2d Cir.

1999). Plaintiff's parallel New York State claim is analyzed pursuant to the same standard. See

Wu v. Good Samaritan Hosp. Center, No. 19-2209-cv, 2020 WL 2551033, at *4 (2d Cir. May

20, 2020).

    The first two elements of a claim of retaliation are not at issue. Plaintiff has clearly

alleged protected activity in the form of making her complaint regarding Burns' conduct. It is

equally clear that Defendants had knowledge of that protected activity. At issue in this motion

are the elements of adverse action and causation.

    As to adverse action in a case alleging retaliation, Plaintiff must plausibly allege only

action that would have dissuaded a reasonable worker from making a claim of discrimination.

See Duplan, 888 F.3d at 626-27; Bowen-Hooks v. Cty of New York, 13 F. Supp. 3d 179, 224

(E.D.N.Y. 2014). Notably, the scope of acts that are deemed adverse for purposes of a claim of

retaliation are broader than those so deemed for a claim of discrimination. See Bowen-Hooks,

13 F. Supp. 3d at 224-25. Additionally, "alleged acts of retaliation need to be considered both

separately and in the aggregate, as even minor acts of retaliation can be sufficiently 'substantial

in gross' as to be actionable." Sosa v. New York City Dep't. of Educ., No. 18-CV-411, 2020

WL 1536348, at *8 (E.D.N.Y. Mar. 31, 2020) (quoting Hicks v. Baines, 593 F.3d 159, 165 (2d

Cir. 2010)). As to causation, Plaintiff must plausibly allege that the adverse action would not

have taken place in the absence of a retaliatory motive. See Vega v. Hempstead Union Free Sch.

Dist., 801 F.3d 72, 90 (2d Cir. 2015); Colon v. St. John's Riverside Hosp., No. 19-CV-5846,

2019 WL 5260722, at *3 (S.D.N.Y. Oct. 15, 2019).

In support of their position as to adverse action and causation, Defendants rely on the facts that, after reporting Burns' conduct, Plaintiff was allowed to stay home pending an investigation of her claim, with full pay.  That fact is undisputed.  Similar to the argument made in support of the motion to dismiss Plaintiff's hostile environment claim, Defendants rely on facts set forth in the November 15 Letter to demonstrate the propriety of their response to Plaintiff's complaint.  In particular, Defendants state that they acted promptly to investigate Plaintiff's claim and took reasonable employment action against Burns.  Importantly, Defendants point out that at the conclusion of their investigation, Plaintiff was asked to return to work at the Huntington Store.  They state that Plaintiff was assured that Burns no longer worked anywhere near the Huntington Store, and that he was banned from ever entering that WBN location. Defendants state that instead of accepting this reasonable offer to return to work in a safe environment, Plaintiff demanded a job at their corporate headquarters – a job which Defendants were in no position to offer.

For her part, Plaintiff disputes Defendants' version of the facts and, while she agrees that she never returned to her job at the Huntington Store, Plaintiff claims to have plausibly pleaded adverse action and causation.  In particular, Plaintiff claims adverse action in the forms of: (1) Defendants' failure to provide Plaintiff with updates as to the status of their investigation during the one month period of October 16, 2018 through November 15, 2018; (2) Defendants' failure to give Plaintiff an opportunity to present medical documentation of her disability; (3) Defendants' termination of Plaintiffs' paid "medical leave suddenly and without any advance notice or warning;" and, (4) refusing to make any effort to accommodate her disability."  (Pl. Mem. of Law in Opp'n to Mot. to Dismiss, (DE [19-2]) at 20-21.)  As to causation, Plaintiff

alleges that all of the instances of adverse action alleged so closely followed her complaint of discrimination as to raise a plausible claim of causation.

Under the circumstances pleaded here, leave with full pay during the pending investigation does not constitute adverse employment action. The remainder of Plaintiff's claims of adverse action, even as amplified in her memorandum of law, are somewhat muddled, conflating her claim of retaliation with a vague claim of failure to accommodate, and suspension without pay. However, Defendants' argument that Plaintiff chose to leave her job even after being afforded the opportunity to return, as well as accepting their version of the facts as set forth in the November 15 Letter, requires the Court to make factual findings that may not be made upon a motion directed to the pleadings. Construing Plaintiff's allegations regarding the termination of her paid leave broadly, and allowing for consideration of the factual circumstances alleged in the aggregate, the Court holds that Plaintiff has plausibly alleged adverse action and causation sufficiently to state a claim of retaliation.

However, like the Court's holding with respect to Plaintiff's hostile environment claim, the Court holds that Plaintiff has not drawn a plausible connection between Burns' status in the Union and Defendants' alleged retaliation. Moreover, Plaintiff is reminded that upon trial of this matter, or indeed, at pre-trial dispositive motion practice, there may certainly be a different result. At that point, Defendants may be able to show that Plaintiff was not, in fact, suspended or terminated, but that after being offered appropriate working conditions, made the decision to leave her position at WBN. It may also be ultimately held that Defendants acted properly with respect to their actions taken against Burns. At this stage of the case, however, the Court holds, as noted, that Plaintiff has pleaded a plausible claim of retaliatory termination, and therefore recommends that Defendants' motion to dismiss the claim of Title VII retaliation be denied.

C.   NYSHRL Claim Failure to Accommodate (Count 7)

Like its federal counterpart, the NYSHRL protects employees with disabilities.  A prima facie NYSHRL claim for failure to accommodate requires a plausible pleading that: (1) plaintiff is a person with a disability under the meaning of the NYSHRL; (2) the employer had notice of the disability; (3) with reasonable accommodation, the plaintiff could perform the essential functions of the job at issue; and (4) defendant has refused to make such an accommodation.  See Noll v. Int'l Bus. Mach., Corp., 787 F.3d 89, 94 (2d Cir. 2015); Frilando v. New York City Transit Auth., No. 18 Civ. 5204, 2020 WL 1940313, at * 7 (S.D.N.Y. Apr. 22, 2020).

As to the issue of whether Plaintiff has pleaded a plausible claim that she is disabled, the Court notes that the NYSHRL defines "disability" broadly.  Thus, the statute defines disability as:

- a physical, mental or medical impairment resulting from anatomical, physiological, genetic or neurological conditions which prevents the exercise of a normal bodily function or is demonstrable by medically accepted clinical or laboratory diagnostic techniques or

- a record of such an impairment or;

- a condition regarded by others as such an impairment.

N.Y. Exec. Law § 292.21.  The definition of "disability" with respect to employment is limited by statute to those disabilities "which, upon the provision of reasonable accommodations, do not prevent the complainant from performing in a reasonable manner the activities involved in the job or occupation sought or held."  Id.; see also Mejia v. City of New York, No. 17-CV-2696, 2020 WL 2837008, at *10 (E.D.N.Y. May 30, 2020).

New York State law defines a "reasonable accommodation" as "actions taken which permit an employee . . . to perform in a reasonable manner the activities involved in the job or occupation sought or held and include, but are not limited to, provision of an accessible worksite,

acquisition or modification of equipment, support services for persons with impaired hearing or vision, job restructuring and modified work schedules; provided, however, that such actions do not impose an undue hardship on the business, program or enterprise of the entity from which action is requested."  N.Y. Exec. L. § 292.21-e.  The reasonableness of the accommodation offered is generally a fact specific inquiry.  See Brooklyn Ctr. for Psychotherapy, Inc. v. Philadelphia Indemnity Ins. Co., 955 F.3d 305, 312 (2d Cir. 2020); Noll, 787 F.3d at 94; Bonds v. County of Westchester, No. 19-CV-1712, 2020 WL 4347704, at *11 (S.D.N.Y. July 28, 2020).  However, where an employer makes a plainly reasonable accommodation, provision of that accommodation may end the analysis and the employer may, under certain factual circumstances, be entitled to judgment as a matter of law.  See Williams v. Geiger, No. 18 Civ. 01398, 2020 WL 1304397, at *9 (S.D.N.Y. Mar. 19, 2020) (granting employer summary judgment where the precise accommodation sought was granted); Borders v. Goodyear Dunlop, N.A., No. 17-CV-1159, 2020 WL 210056, at *8 (W.D.N.Y. Jan. 14, 2020) (granting summary judgment where plaintiff was granted a reduced schedule to accommodate disability); see also McCrain v. Metropolitan Transp. Auth., No. 17-CV-2520, 2020 WL 1285634, at * 19 (S.D.N.Y. March 18, 2020) (noting reasonableness of requiring medical documentation).

      In recognition of these standards, it is clear that under the NYSHRL, if "an employee has a physical impairment that prevents the employee from performing the core duties of his or her job even with a reasonable accommodation" that employee does not have a covered disability and their employer "is free to take adverse action against the employee based on that impairment."  Jacobsen v. New York City Health & Hosp. Corp., 22 N.Y.3d 824, 834 (2014); see also Romanello v. Intesa Sanpaolo, S.p.A., 22 N.Y.3d 881, 883-84 (2013).  Conversely, if the employee can perform their job with a reasonable accommodation, no adverse action can be

taken against that employee.  <u>Jacobsen</u>, 22 N.Y. at 834; <u>Romanello</u>, 22 N.Y.3d at 883-84.

While determination of what is reasonable will likely involve an interactive process betwen the parties, failure to engage in such a process cannot be relied upon as a separate denial of an employee rights under the NYSHRL.  <u>See</u> <u>Jacobsen</u>, 22 N.Y.3d at 838.  Moreover, there is "no liability for an employer's failure to explore alternative accommodations when the accommodations provided to the employee were plainly reasonable." <u>Borders</u>, 2020 WL 2020 WL 210056, at *8.  Finally, the Court notes that the employee bears the ultimate burden of proof as to their claim of a reasonable accommodation.  <u>See</u> <u>Romanello</u>, 22 N.Y.3d at 883-84.

Plaintiff claims to suffer from anxiety, depression and unbearable panic attacks.  (DE [1] ¶¶ 21, 60-62, 128.)  She alleges also that, as a result of these conditions, she was "unable to return to work at any WBN retail location for many months," and that she therefore "requested transfer to a position with similar pay and stature at a non-retail location."  (<u>Id.</u> ¶¶ 129-30.)  In support of the motion to dismiss Plaintiff's NYSHRL claim, Defendants first question whether any condition alleged to be suffered (depression, anxiety and panic attacks) can constitute a disability as a matter of law.  They also argue that Plaintiff's request to be re-assigned to a non-retail location is unreasonable as a matter of law.  In particular, it is argued that Plaintiff's job was at a WBN retail location, and therefore a core responsibility of that job required her presence at such location.  Moreover, Defendants note that Burns was re-assigned to a location where he would have no contact whatsoever with Plaintiff.  Any request that Plaintiff be isolated from Burns' "friends" or members of the Union is also argued to be unreasonable as a matter of law.

As to the issue of disability, the Court cannot determine whether Plaintiff in fact suffers from a disability under the NYSHRL.  Therefore, the Court recommends that the motion to dismiss be denied to the extent that it is based upon the limited argument that Plaintiff's

description of her conditions, as set forth in the pleadings, does not constitute a disability.

      With respect to the reasonableness of the accommodation sought, the Court notes that if it is true (as Defendants allege) that a core responsibility of Plaintiff's job was her presence at a retail location, and the accommodation sought was "re-assignment" to Defendants' corporate offices, the accommodation would likely be unreasonable, and render Plaintiff unable to perform the job she held.  Upon such a factual finding, Plaintiff's NYSHRL claim would be properly dismissed.  The Court also observes that if the reason Plaintiff sought a different job somewhere within Defendants' corporate structure was because she might encounter a friend of her harasser or a Union member at a retail location, that accommodation would also be unreasonable.  Under such circumstances, i.e., where Plaintiff cannot perform her job under any circumstances, Defendants argue, correctly, that New York law would allow termination.  See Mejia, 2020 WL 2837008, at *11 (noting that the elements of a prima face claim under the NYSHRL for failure to accommodate include establishing that "with reasonable accommodation, plaintiff could perform the essential functions of the job at issue") (quoting Nieblas-Lieb v. New York City Hous. Auth., 165 F. Supp. 3d 51, 72 (S.D.N.Y. 2016)); see also Lazzari v. New York City Dep't of Parks and Recreaction, 751 Fed. App'x. 100, 103 (2d Cir. 2018) (stating that a reasonable accommodation under New York law can "never involve the elimination of an essential function of a job") (quoting McMillan v. City of New York, 711 F.3d 120, 127 (2d 2013)).

      However, the precise nature of Plaintiff's job, and the accommodation sought, are facts that cannot be found on a motion directed to the pleadings.   After discovery, and upon a motion for summary judgment or at trial, Defendants may prove to be correct in the facts alleged, and Plaintiff's NYSHRL claim may be dismissed.  However, a grant of dismissal at this stage of the litigation requires the Court to find that the facts alleged by Defendants are, indeed, the facts of

this case.  Because this cannot be decided at the pleading stage, the Court must recommend that Defendants' motion to dismiss Plaintiff's state law claim of failure to accommodate her disability be denied.

IV.    Leave to Replead

While Plaintiff does not request leave to amend in the event Defendant's motion to dismiss is granted, "it is the usual practice upon granting a motion to dismiss to allow leave to replead."  Cruz v. TD Bank, N.A., 742 F.3d 520, 523 (2d Cir. 2013).  However, as the only claims dismissed here are for failure to exhaust administrative remedies, and the Court has already considered the EEOC Complaint, there is no pleading deficiency to be addressed.  Accordingly, this Court recommends that the dismissal of Plaintiff's ADA claims be without leave to replead.

RECOMMENDATION

For the foregoing reasons, this Court respectfully recommends that Defendants' motion to dismiss, appearing at Docket Entry [18] herein, be granted in part and denied in part.  In particular, the Court recommends dismissal of all ADA claims (Counts 5 and 6) for failure to exhaust administrative remedies, and that, in all other respects, the motion to dismiss be denied.

OBJECTIONS

A copy of this Report and Recommendation is being provided to all counsel via ECF.  Any written objections to this Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days of filing of this report.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 72(b).  Any requests for an extension of time for filing objections must be directed to the District Judge assigned to this action prior to the expiration of the fourteen (14) day period for filing

objections.  Failure to file objections within fourteen (14) days will preclude further review of this report and recommendation either by the District Court or Court of Appeals. <u>Thomas v. Arn</u>, 474 U.S. 140, 145 (1985) ("[A] party shall file objections with the district court or else waive right to appeal."); <u>Caidor v. Onondaga Cnty.</u>, 517 F.3d 601, 604 (2d Cir. 2008) ("[F]ailure to object timely to a magistrate's report operates as a waiver of any further judicial review of the magistrate's decision").


**SO ORDERED:**

Dated: Central Islip, New York
      August 12, 2020                      /s/      Anne. Y. Shields
                                            ANNE Y. SHIELDS
                                            United States Magistrate Judge